**GENERAL CREDIT, Inc., a corporation, Appellant,**

v.

**Claude R. BROWN, Appellee.**

**Claude R. BROWN, Appellant,**

v.

**GENERAL CREDIT, Inc., a corporation, Appellee.**

Nos. 2118, 2119.

Municipal Court of Appeals for the District of Columbia.

Argued March 10, 1958.

Decided May 26, 1958.

Seymour Korn, Washington, D. C., with whom Samuel Barker, Washington, D. C., was on the brief, for appellant in No. 2118 and for appellee in No. 2119.

Carl Phillip Fogel, Washington, D. C., for appellee in No. 2118 and for appellant in No. 2119.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Mr. Brown purchased an automobile from a local dealer in December 1955 under a conditional sales contract which provided, among other things, for a down payment and the balance in monthly installments of $63.50, commencing January 6, 1956. The contract recited that if Mr. Brown should default in any payment, the seller or its assignees had the right to repossess and resell the car "without notice or demand for performance * * *." It was also agreed that "Any action to enforce payment of said note or any indulgences or rearrangements granted the Buyer shall not be a waiver of or affect any rights of a holder hereof." Subsequently the conditional vendor assigned all of its rights under the contract to General Credit.

It appears, although the evidence was somewhat questionable on this point, that at the time the car was conditionally sold, Mr. Brown also bought a policy of disability insurance. Mr. Brown offered no other evidence concerning the circumstances surrounding the procurement of the insurance other than to state that he "purchased insurance" from the original seller, but it appears that the insurance was purchased through the office of General Credit. A specimen of the policy,[1] which was introduced in evidence, provided generally that if the insured debtor became disabled, the insurance company[2] would assume the debtor's [Brown's] obligations to the named creditor [General Credit]. A clause in the policy read as follows:

"In the event any Insured Debtor shall become totally and permanently disabled during the term specified in the individual Certificate issued to that Debtor, so that he is prevented from engaging in any occupation, or from performing any work for compensation or profit as a result of bodily injuries sustained during said term and effected solely through accidental means or as a result of sickness contracted and commencing during said term and such total disability shall in either case continue during said term for more than 30 consecutive days and shall require the Debtor to be regularly treated by a licensed physician other than the Debtor, the Company agrees to pay indemnity for the actual number of days commencing with the 31st day thereof that falls within said term, the amount of such daily indemnity to be calculated as ⅓₀th of the monthly indemnity stipulated above."

As we have noted, the monthly payments were to commence on January 6. The first payment, however, was not made until January 24; the second payment, due February 6, was not fully paid until March 13; and the third payment, due March 6, was finally made on March 28.

In the latter part of February Mr. Brown developed arthritis, and on March 9 he fell down a flight of steps. He worked only intermittently after that, and finally stopped working altogether on March 23. Sometime in the latter part of March or early in April, he notified General Credit over the telephone that he was unable to work. According to his testimony, an employee of General Credit told him, "You know you have an insurance that will take care of you in case of disability." Subsequently he received in the mail a form with the caption, "Notice of Claim for Disability Benefits," together with a letter, dated April 10, from General Credit which read as follows:

"Enclosed please find form which must be completed by you and forwarded to your attending physician for signature. If you will refer to your policy you will find that there is a thirty day waiting period and if you are disabled and unable to work for more than 30

---

1. Mr. Brown had destroyed the original. Both parties stipulated to the use of a copy.

2. Not a party to this suit.

days please have your attending physician complete this form. We would suggest that you accordingly wait 60 days before completing this form unless of course you returned to work before that date.

"When this form has been completed please return it to our office."

Later he again told General Credit of his disability, and received another letter, dated May 1, which stated:

"Enclosed please find form which. must be completed by you and forwarded to your attending Physician for signature. When this has been completed please return it to our office."

Mr. Brown never did fill out the forms and return them.

Meanwhile, no payments were made on the installments due on either April 6 or May 6. On May 9 the car was repossessed by General Credit and sold. According to Mr. Brown's evidence, he was not given any notice that his car would be repossessed, nor was he told that if he failed to make the payments, the car would be retaken.

The proceeds from the sale of the car were insufficient to extinguish the debt, and accordingly General Credit brought this action for the deficiency. Mr. Brown answered with a general denial and filed a counterclaim for "malicious breach of contract" which sought both compensatory and punitive damages. At the conclusion of all the evidence, which we have detailed above, General Credit moved for a directed verdict on Mr. Brown's counterclaim. This motion was denied. Both claims were submitted to the jury which returned a verdict for Mr. Brown on General Credit's suit and also a verdict for him on his counterclaim in the sum of $682 for compensatory damages and $750 for punitive damages.

Thereafter General Credit filed a motion for judgment n. o. v. which attacked the jury's verdict on Mr. Brown's counterclaim.

The court granted the motion with respect to the award of punitive damages and denied it as to the compensatory damages. Judgment was entered for Mr. Brown on General Credit's claim, and for $682 compensatory damages on his counterclaim. Judgment was also entered for General Credit on Mr. Brown's claim for punitive damages. General Credit appeals only from the judgment awarding compensatory damages and assigns as error, among other things, the court's denial of its motion for a directed verdict. Mr. Brown cross-appeals from the judgment denying his claim for punitive damages.

■ While the theory underlying Mr. Brown's counterclaim is not entirely clear to us from a reading of his brief, his position, from a study of the pleadings filed below, appears to be that there was an implied term [3] in the conditional sales contract that if he became disabled, General Credit would not repossess his car until the insurance payments were forthcoming, and consequently its premature repossession of the car before he had completed the forms and obtained the insurance benefits constituted a "breach of contract." The evidence here, however, clearly shows no such breach. The insurance policy specifically provided that no payments would be made for the first thirty days of disability which, in this case, would have been from March 23 to April 22. During this period it was Mr. Brown's obligation to maintain the payments himself, and his failure to pay the installment due April 6 was a default in performance on his part which gave General Credit the right under the conditional sales contract to repossess the car. If payments under the insurance policy were to commence immediately upon disability, or if Mr. Brown had made the April 6 payment but no subsequent payments, the result might be different, but such is not the situation here.

■ Mr. Brown urges that he was never asked for the April 6 payment or notified

3. Certainly there was no such express provision.

that his car was about to be repossessed, but in the conditional sales contract he explicitly consented to repossession upon default without demand or notice. He also contends that General Credit waived its right to strict performance as regards the April 6 payment by its acceptance of the delayed prior payments, and consequently he was entitled to notice before General Credit could declare a forfeiture. However, the contract specifically stated that " * * * any indulgences or rearrangements granted the Buyer shall not be a waiver of or affect any rights of a holder hereof." Such a provision is valid and enforceable.[4]

While Mr. Brown's case is mainly pitched on the theory of "breach of contract," there are allegations in some of the pleadings and certain statements in his brief here which would make it appear that he was also suing for fraud and misrepresentation, but whether he was actually relying on such a claim or had abandoned it, we cannot say with any certainty from the confused record before us. Clearly no such question was submitted to the jury in the court's instructions. In any event, we think the evidence wholly insufficient to support such an action. Apparently Mr. Brown asserts that he was led to believe the insurance covered the entire disability period by the statement of General Credit's employee over the telephone that "You know you have an insurance that will take care of you in case of disability," and the suggestion in General Credit's letter of April 10 that he wait sixty days before completing and returning the form. The statements in the letter are of no significance for even if he had returned the form the next day and received the insurance benefits immediately, they still would not have covered the April 6 payment for which he was solely responsible. While the general statement over the telephone may have been misleading, it was certainly clarified by the letter of April 10 which informed Mr. Brown that if he would refer to his policy he would note the thirty-day waiting period. Obviously, there was no concealment since Mr. Brown admits that he had a copy of the policy. Considered as a whole, we think that the testimony here fell far short of the standard of "clear and convincing evidence" required to prove fraud.

We conclude therefore that it was error to deny General Credit's motion for a directed verdict on Mr. Brown's counterclaim. Our holding on this issue renders it unnecessary for us to consider the other contentions advanced by General Credit, as well as Mr. Brown's cross-appeal.

Judgment in No. 2118 is reversed.

Judgment in No. 2119 is affirmed.

4. Lundberg v. Switzer, 1928, 146 Wash. 416, 263 P. 178, 59 A.L.R. 131.